Court will proceed to the fourth case, Till v. Dolgencorp. Ms. Graziano. Good morning, and may it please the Court. We are here on the erroneous granting of summary judgment by Judge Pratt in the matter of Dollar General's duty to Mr. Till. When we look at our summary judgment standards to be applied, the goal here on appeal is to scrutinize that decision to make sure that Mr. Till was not denied his day in court. And when we look at the facts as designated to the trial court and again on appeal, in the light most favorable to Mr. Till, summary judgment should be reversed for three main reasons. One, the doctrine of res ipsa loquitur. Two, the duty under the policy, Dollar General's own policy, or what is known, excuse me, as the assumption of duty. And three, a common law negligence claim with regards to the premise liability for Dollar General. Now, there was no provision in the contract between Dollar General and U.S. Express making Dollar General responsible for the safe loading of the roll painters, was there? I would disagree with that, Your Honor. In particular, the contract provides that the independent contractors must comply with Dollar General's own policies with regards to their direction in the loading and unloading of their particular merchandise. In particular, these roll painters are prepackaged by Dollar General. These roll painters are then packed into a trailer by Dollar General. The trailer is sealed by Dollar General. The seal is broken by Dollar General and then can only be broken again by the managers of the individuals. They cannot... Am I... I'm sorry. I'm sorry. Go ahead, Your Honor. Am I right in thinking the contents of the roll painter would have been visible to Mr. Till? And if so, did he have a duty to note the imbalance of the load and take appropriate precautions? If he did, and I would not concede that he did, but if he did, and we are doing a comparative analysis of who should have done what, that is not appropriate on summary judgment. That is an issue that should be left for the jury in the case based upon the facts designated. I would not concede that he had any responsibility nor was allowed to do so under the contract and the training he was provided by the contractor because he was to follow Dollar General's own instructions. That was to take the roll painters as prepackaged into the store and deliver them. Not to unload them, not to change them, but to deliver them as packaged. They have a... Go ahead. Go ahead. Dollar General has a specific policy as how they are to be packaged. And so, therefore, they packaged them and Mr. Till had to deliver them in that contents. So, is that what you believe to be the evidence that would show us that Mr. Till was prohibited from repacking a roll painter if he noticed that it was top heavy? Again, when we are judging the credibility of the evidence, it should not be appropriate for summary judgment, even if we would concede that. Even if we would concede he had this responsibility to do so, there is no allowance in the contract or in the facts designated to the trial court or to this panel that he was allowed to do so. So, I would concede that we have particularly provided or the absence of that evidence is that he was not required to do that. Nor is he allowed to do it because they are prepackaged by them and he has to deliver them in the way that they were packaged by Dollar General Distribution Center. What duties do you believe U.S. Express undertook under the contract? Well, first and foremost, we believe that U.S. Express, because they are the designated delivery for Dollar General, they are the people that do it, that they trained Mr. Till appropriately. In this case, not at the trial court level nor to this panel, has anyone ever alleged that Mr. Till did anything inappropriately? That he didn't follow the policies and procedures, that he didn't do what he was supposed to do, or that he wasn't trained appropriately? Importantly, in this case, Dollar General points out that Mr. Till, on the day of the incident, was able to deliver five to six roll painters uneventfully, without incident. And he did that in the same way he delivered the next one. And the reason the one that caused the injury was because it was the one that was improperly packed by Dollar General. It was the one that was packed in violation of their own policy. And that is why this happened and that is why Race Ipsa applies here. They were in control of this roll tainter. They are their roll tainters. They are packaged by them at the distribution center. They are put in the trailers and then they are delivered in the manner dictated by Dollar General. In the way to be delivered, they have to go through a specific egress door, which is the back door of the store. He has no independent ability to change that process, nor can he. And so therefore, it was this roll tainter that was improperly packed on that day that caused the injury. It was in their exclusive control. There is no evidence in this case that U.S. Express did not comply with its contractual obligations as it relates to Mr. Teal on May 28th of 2016. If I may, Your Honor, I'd like to also point out with regards to Race Ipsa and why we believe that the trial court, Judge Pratt, erroneously ignored the regards to the exclusive control argument. Because that really is Dollar General's big argument, is that because Mr. Teal had the roll tainter in his possession, therefore they have no obligation. That is not dispositive in this case. Physical control of something is not the only thing to look at. Rather, one must look at who has the opportunity and access to retain that control. And in this case, it's clear that was not Mr. Teal. That was Dollar General. And so therefore, based upon their own policy, based upon their control of that roll tainter that causes injury, Race Ipsa would have required that summary judgment not be granted in this case. There are two other theories or reasons, the assumption of duty as well as the common law negligence of premise liability. And I want to take a moment now and I will address those two theories in rebuttal. But I want to address, importantly, one of the arguments raised by counsel was that we have waived those arguments because they weren't specifically in the lower court or the trial court. Because I believe that that's an issue that this court will take up and consider. We have not waived those arguments. The issue has always been whether or not a duty was owed to Mr. Teal by Dollar General. We rely upon the case of National Metal Contractors, Inc. v. McNeil. It's a Seventh Circuit case in 1986, which held when the facts are so intertwined with the issue to be decided, it is appropriate for the appellate court to consider alternative theories. And that's exactly what happened here. No matter which basket we put this in, whether it is res ipsa, whether it is assumption of duty, or whether it is common law negligence, which was properly pledged, the facts are identical. And we see that in the appellate briefing because the facts alleged by the plaintiff, Mr. Teal or the appellant, are the same. And the arguments by Dollar General in response to those two claims are identical as well. It doesn't matter. The issue has always been duty. And no matter what basket we find duty, duty should have been an issue that went to this jury. And I will reserve my remaining time for rebuttal. All right. Thank you, Ms. Garcia. Mr. Beaman? Judge Robner, can you see that? I can't, but what is it? Judge Robner, this is the, it's actually docket entry 75-2. The picture of the truck? Yeah, it's a picture of the roll, it's a picture of the roll tainers, actually. 72-5. Oh, I have that here. I spoke dyslexic there. 72-5 is the docket entry. Right. I have some. Okay. Thank you, Judge. Thank you, though. Thank you, everyone. May it please the court, your honors. Thank you. Counsel, I brought a demonstrative exhibit, and I think it's actually somewhat important to the argument today. This was presented in one of the depositions that's in designated evidence. And this shows kind of what a typical roll tainer looks like. And I think this kind of answers the question, Judge Robner, that you had, which is whether Till could see through it. This is what a typical roll tainer looks like. Now, this is, I would submit that this is not actually the one in this case. There's no picture of the one in this case. This is just a demonstrative that was used in questioning. But I think it provides some interesting context. While the issue here today is duty, I certainly provide some interesting context with regards to those duty questions and the use of the roll tainers. I'd like to address, since we've talked about the roll tainers, I think Judge Robner's question was specifically, is there something in the contract that provides U.S., that makes Dollar General responsible for the safety of those roll tainers? I don't think it was a question of whether there's something in the contract about the roll tainers, because there is. The question is about whether there's safety in the roll tainers. And there's nothing in the contract that obligates Dollar General to make those roll tainers safe. And there's a number of provisions that address roll tainers actually in the contract, which I think are important to read through. Quote-unquote, this is a docket entry 47-3-4. Each U.S. Express driver shall unload all roll tainers on each trailer and shall assist in unloading of any other items on a trailer as needed. The contract in this case, the expectations between the parties was that the job that U.S. Express was going to do was pick up those roll tainers from the distribution center and deliver it to the store. That was the expectations between the parties. There's no obligation of Dollar General in that contract that ensures their safety, that ensures they have to train the U.S. Express drivers. The U.S. Express contract specifically states they're doing this as independent contractors. And in fact, even specifically says U.S. Express shall have exclusive control and direction of the persons operating the equipment or otherwise engaging in such services. That's docket entry 47-3-4, paragraph 3. Is this Dollar General's decision that a driver like Mr. Till was free to pack, you know, to repack a roll tainer if he noticed a problem with the distribution of its contents? Sure, sure. There's no, as Mr. Till testified in his deposition, which was designated in the summary judgment briefing, there's no policy of loading or unloading the actual roll tainers itself. The policy that's been referred to and designated is the policy of how that whole entire delivery process works. So they pick it up from the yard at the distribution center, they deliver it to the store, they go and notify a store manager that they're there. The store manager actually unbreaks the seal. Then the Dollar General, pursuant to their policies and in this case, the manager then or whoever was at the store, they go back in the store and it's the exclusive responsibility of the U.S. Express driver to unload the roll tainers into the store. So what is the, forgive me, but what is the, okay, what is the contents of the roll tainer had injured Mr. Till in some other manner? Suppose a battery in the roll tainer had exploded, for example. Would it still be your position that Dollar General owed Mr. Till no duty of care? Yes. And the reason is that in Indiana, under any existing common law, there's no duty owed to an employee of a contractor. Now, there are five non-delegable exceptions to that. And the second, it was typically referred to as the second exception, is if there's a contract provision that would actually provide otherwise. Or it could be assumed under law like a policy or procedure. In this case, I think to answer more directly your question was, there's, we didn't have, Dollar General does not have a policy. We do not dictate the specific manners and means in which those drivers had to unload those roll tainers. So Mr. Till testified, for instance, that he takes toppers off of the trailer. Toppers are the stuff that they kind of throw on top of the roll tainers that are in the truck because there's a gap between the top of the truck trailer and the top of the roll tainer. He takes those off. There's no policy on whether he cannot unpack the roll tainer or not do so. There's just no policy on it. I thought you might answer, I think Judge Rovner's asked a really good question of you, and that is, so suppose you had some kind of toxic chemical or an explosion or some kind of real, a knife or a shank or something like that that could cut a delivery person in a really bad way. I thought what you were going to say is that Indiana law provides some exceptions about dangerous products and manifest injury and stuff like that. So this gets to the general rule. We fall back on the general rule, which is that you do no duty on the safety of a non-employee. There are five non-delegable exceptions. And we cite, there's a number of cases actually cited in the brief that all kind of cite these same five. Merrill is one of them, M-E-R-R-I-L, and then Stumpf in the briefs talk about this. But one of the exceptions, and this might get to that specific if it's a hazardous type of knife or something. What's a delivery driver supposed to do if she or he is pushing something like that into a store and all of a sudden there's an explosion that blinds the person? I think that would probably get to the exception, non-delegable duty exception number one, which deals with performing intrinsically dangerous work. I think that would cover situations, for instance, if you're carrying a toxic sludge around or something like that. There might be a little extra duty on the person that's actually paying for that work to be done. In this case, the contents of the roll tanner were obviously, it's a little disputed a fact, obviously, but Mr. Till alleges that it's canned goods, watered goods, and bottled water. I have just one brief question, final question for you. Is there anything in the record that shows that when something's mixed up with the way that thing's packed or what have you, that the driver goes and gets the store manager and says, hey, look, I can't wheel this thing in. So you break the seal, I break the seal, we break the seal together, but we've got to repack this thing because there's no way I can wheel it in like this. Great question. Mr. Till testified in his deposition that he had prior incidences with roll tanners. He didn't further on that point, but he did say whenever he had an issue, he let his driver manager know, who is Bob Cox in the record, and it's the manager of U.S. Express. I would just think as a common sense matter, you'd go get the store manager and say, hey, look, I know I can't break the seal, but I've got an issue here. If you want this thing in there, you've got to deal with this, or help me deal with it. I would agree that's a fair point, and I think in the context, and I think where Judge Robner was getting at was, this incident happened in the context of he had already moved in five or six roll tanners, and he was in the process of moving another one in, and this gets to exactly the exclusive control thing, our argument on the Ray-Cipsa, why it didn't apply in the trial court. And that is, there are a lot of intervening facts where he had exclusive control over those roll tanners before this incident happened. So this incident happened at the cusp of the doorway. Before he gets to the cusp of the doorway, he has to roll out the roll tanner onto the lift gate. He usually, I think he has three other ones on the same lift. And he moves it down, and then he has to push it all the way through the concrete back way into the entranceway, up the little ramp into the entranceway. That all happened before this incident even happened. And that's one reason why we're saying that this is not, and I think where Judge Pratt appropriately got this right, is this is not a situation where we had exclusive control over that roll tanner in this case, and that's why this is not an unusual circumstance where Ray-Cipsa should apply, because those intervening facts and that intervening time, that roll tanner was fully in his control. And there's nothing actually preventing him from looking through that roll tanner, taking stuff off that roll tanner, or feeling that roll tanner. Between that time, he gets up to where the incident happened. And that's why we think Ray-Cipsa just generally doesn't apply in the case. And I think I would like to add, with respect to Ray-Cipsa before my time runs out, there's also no evidence, and we did argue this actually in the briefing, but Judge Pratt only ruled on the fact, she relied only on the fact that she thought it was not exclusive control. But we did argue that there's also no evidence that this is the accident of type that does not ordinarily happen if someone is exercising proper care. So this is, you know, a barrel should not fall out of a warehouse without some negligence. I think it's very difficult to say, at least without some technical input of some sort, that that's the same situation with a roll tanner in this case. My time has almost expired, and so I appreciate the court's time in having the oral argument today. We'd request the district court's decision be affirmed. Thank you, Mr. Newman. Ms. Graziano? I want to address a couple things, kind of more on the lines of, let's be more practical about what happened on May 28th of 2016. This is a gentleman that was able and had been working for U.S. Express and was able to deliver these roll tanners that were properly packed in accordance with Dollar General's duty without event. And it's when he ran into one that was not packed appropriately that he had an event. And what we can see clearly from the briefing, as well as the arguments today, is there is a dispute as to who was negligent. Was it Mr. Till? Should he have done something different? I would submit he was not allowed to, and based upon the contract, they specifically say that the driver shall comply with the instructions of Dollar General in unloading and loading the trailers. That contract was designated by Dollar General. Was Dollar General negligent in packing the roll tanner? The answer is likely yes. And because we have these different inferences that can be drawn, summary judgment should not have been granted in this case, despite the fact that he was an independent contractor, because in the contract, they specifically say they are not going to contract away their negligence. And there is evidence of negligence in this case as designated. Ms. Graziano, if Mr. Till, as he's about to deliver the defective roller, senses it's overloaded or improperly packed, what should he have done at that moment? What was his responsibility, or Dollar General's? In other words, he's delivered the several of them, and it's fine. He senses he's got a damaged one. Should he have just halted? Should he have gone forward? What was the delivery person's responsibility at that point? In that particular instance, he was committed to his delivery, and he should have finished his job, which he attempted to do. Just so I understand the practicality, suppose something's falling off as he delivers it. Should he continue to just let it fall off? I wouldn't say you should know, because I think what a reasonable person would do under those circumstances is react to it and attempt to catch it and not let it fall, which is exactly what he described happened here. Well, if you sense the imminent danger that's about to happen because of a poorly packed roller, shouldn't you just stop? Should you go forward? I'm just trying to get a sense where responsibility lies here, and I appreciate your argument, but was he aware that he is pushing a damaged roller? It's not a damaged roller. It was an overpacked roller. Well, overpacked is my equivalent of being damaged. I like that. You're quite right. It's overpacked. It's not damaged. It's improperly packed, let's say. Yes. The realization that it was improperly packed and then became a hazard was when he was pushing it into the threshold designated by Dollar General into the store. At that point, the only choice he had was either to attempt to roll it back down or to attempt to roll it into the store, and he made a choice based upon his best judgment, and when he did that, that top-heavy roll tainter is what fell over and injured him. That's what occurred here. So I would say that he did what most people would have done under the same or similar circumstances when he realized the danger, when he was pushing it through the door designated by Dollar General. Thank you. Thanks. Counsel, the case is taken under advisement.